20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff

v.

D-1 MOHAMED KAZKAZ,
D-2 ZIAD KHALEL,

        Defendants.

23-cr-20022

Hon. George Caram Steeh

VIO: 18 U.S.C. § 1349
18 U.S.C. § 2
18 U.S.C. § 1957
18 U.S.C. § 982
18 U.S.C. § 371
42 U.S.C. § 1320a-7b
18 U.S.C. § 1957

FILED USDC - CLRK DET
2023 MAR 15 PM4:13

---

## FIRST SUPERSEDING INDICTMENT

---

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1.    The Medicare program was a federal health care program providing benefits to persons who were 65 or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under

the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare included coverage under two primary components, hospital insurance ("Part A") and medical insurance ("Part B").  Medicare Part B covered the costs of medical insurance, including physician, nursing, and other ancillary services not covered by Part A.  The services at issue in this Information were covered by Part B.

4.      CoventBridge Group was the Zone Program Integrity Contractor ("ZPIC"), and as such, it was the Medicare contractor charged with investigating fraud, waste, and abuse, during the relevant time period.

5.      To participate in Medicare, providers were required to submit applications in which the providers agreed to comply with all Medicare-related policies and procedures, rules, and regulations issued by CMS and its agents and contractors, including those governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims.

6.     If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims.

7.     Local Coverage Determinations ("LCDs"), as defined by the Social Security Act, were decisions made by a Medicare Administrative Contractor ("MAC") on whether a particular service or item was reasonable and necessary, and therefore covered by Medicare within the specific region that the MAC oversaw. LCDs 34616 and 30489 were titled "Psychiatry and Psychological Services" and applied to the primary geographical jurisdiction of Michigan.  These LCDs specified that Medicare coverage of psychotherapy did not include teaching grooming skills, monitoring activities of daily living ("ADL"), recreational therapy (dance, art, play), or social interaction. It also did not include oversight activities such as house or financial management. LCD A54829, entitled "Clinical Social Worker Services," stated that services furnished as an "incident to" clinical social work ("CSW") personal professional services were not covered.

8.     Providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form. These records were required

3

to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

9.      To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), to the Medicare contractor or carrier containing the required information appropriately identifying the provider, beneficiary, and services rendered.

10.     Medicare only covered services that were both medically necessary and rendered as billed.

### Federal Anti-Kickback Statute Compliance

11.     As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute.  Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

### The Related Businesses

12.     Centre was a Michigan corporation doing business at 34600 West Twelve Mile Road, Farmington Hill, 48331.  Centre was enrolled as a participating

Medicare provider and submitted claims to Medicare.  Centre was a psychotherapy agency that purportedly provided individual and group psychotherapy sessions to patients.

### The Defendants and Related Entities

13.    MOHAMED KAZKAZ was a resident of Oakland County, Michigan. KAZKAZ was the controller, operator, resident agent of Centre. KAZKAZ was the sole signatory on the bank accounts into which Medicare reimbursements to Centre was deposited.

14.    ZIAD KHALEL was a resident of Oakland County, Michigan, and was a patient recruiter for Centre.  KHALEL was the controller, operator, and resident agent of URUK, a limited liability company, registered in the State of Michigan. KHALEL was also the controller, operator, and resident agent of IPACK, a limited liability company, registered in the State of Michigan.

15.    Individual A was a resident of Oakland County, Michigan, and operated a home health agency in Dearborn, Michigan, that purportedly provided in-home physical therapy, occupational therapy, and skilled nursing services to patients.

**Count 1**
**Conspiracy to Commit Health Care Fraud**
**(18 U.S.C. § 1349)**

**D-1 MOHAMED KAZKAZ**
**D-2 ZIAD KHALEL**

16.     Paragraphs 1 through 15 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

17.     From in or around January 2018 and continuing through in or around January 2023, in Oakland Counties, in the Eastern District of Michigan, and elsewhere, MOHAMED KAZKAZ, ZIAD KHALEL, and others, did willfully and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a. to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services; and

b.  to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

### Purpose of the Conspiracy

18.     It was the purpose of the scheme and artifice for the defendants to unjustly enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for services that were medically unnecessary and not eligible for reimbursement; (b) offering, paying, soliciting, and receiving kickbacks and bribes for the purpose of arranging for the use of Medicare beneficiary information as the bases of claims submitted for psychotherapy services; (c) concealing the submission of false and fraudulent claims to Medicare, and the receipt and transfer of the proceeds of the fraud; and (d) diverting proceeds of the fraud for their personal use and benefit.

## The Manner and Means of the Conspiracy

19.    The manner and means by which the defendants sought to accomplish the objects and purpose of the conspiracy included, among other things:

20.    MOHAMED KAZKAZ certified to Medicare that he would comply with all Medicare rules and regulations, and federal laws, including that he would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that he would refrain from violating the Anti-Kickback Statute.

21.    MOHAMED KAZKAZ owned and controlled a psychotherapy agency, Centre, for the purpose of submitting false and fraudulent claims to Medicare seeking reimbursement for psychotherapy services that were not provided or were otherwise not eligible for reimbursement and whose Medicare identification numbers were procured through kickback and bribes.

22.    MOHAMED KAZKAZ offered and provided kickbacks and bribes to ZIAD KHALEL, and others, as an inducement to refer Medicare beneficiaries to Centre for psychotherapy services, even though such services were medically unnecessary and were never rendered.

23.    The Medicare beneficiaries referred to KAZKAZ by KHALEL were patients of Individual A's home health agency and were not, in fact, in need of psychotherapy services. KHALEL would require the recruited Medicare

beneficiaries to sign blank Centre sign-in sheets to allow KAZKAZ to submit claims to Medicare, through Centre, for psychotherapy services that were never rendered.

24.     MOHAMED KAZKAZ, ZIAD KHALEL and others submitted and caused Centre to submit false and fraudulent claims, through interstate wires, to Medicare for psychotherapy services purportedly rendered to Medicare beneficiaries, when in truth and in fact, such psychotherapy services were never rendered, were not medically necessary, and were not eligible for Medicare reimbursement.   As a result of these false and fraudulent claims submitted to Medicare through interstate wires, Medicare made payments to Centre in an amount in excess of $4.3 million dollars.

All in violation of Title 18, United States Code, Section 1349.

### Count 2
### Conspiracy to Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

**D-1 MOHAMED KAZKAZ**
**D-2 ZIAD KHALEL**

25.     Paragraphs 1 through 15 and 17 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

26.     From at least in or around January 2018, and continuing through in or around January 2023, the exact dates being unknown, in Oakland and Wayne Counties, in the Eastern District of Michigan, and elsewhere, the Defendants, MOHAMED KAZKAZ, ZIAD KHALEL, did willfully and knowingly conspire and

9

agree with each other and others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

    a.  to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

    b.  to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

### Purpose of the Conspiracy

27.    It was a purpose of the conspiracy for the defendant and his co-conspirators to unjustly enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes in return for Medicare beneficiary referrals; and (2) submitting and causing the submission of claims to Medicare for purported psychotherapy services provided to those recruited beneficiaries.

### Manner and Means of the Conspiracy

28.    The manner and means by which the defendants and others sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

29.    MOHAMED KAZKAZ paid and caused the payment of illegal kickbacks and bribes to ZIAD KHALEL, and others in exchange for referring Medicare beneficiaries and providing Medicare beneficiary information that KAZKAZ used to support the submission of claims to Medicare, through Centre, for purported psychotherapy services.

30.    MOHAMED KAZKAZK, ZIAD KHALEL, and others disguised and concealed the kickbacks and bribes to KHALEL and others through KHALEL's company.

31.    MOHAMED KAZKAZ wrote checks to ZIAD KHALEL's company from bank accounts, including JP Morgan Chase Bank checking account ending in

x0690. ZIAD KHALEL would in turn pay the recruited Medicare beneficiaries in cash and checks from his company with proceeds from the checks he received as compensation for recruiting and referring Medicare beneficiaries to Centre.

## Overt Acts

32.    In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, at least one of the following overt acts, among others:

33.    On August 3, 2018, MOHAMED KAZKAZ, paid and caused the payment of approximately $400.00 to ZIAD KHALEL in the form of check number 0117, drawn on JP Morgan Chase Bank checking account x0690, held in the name of Centre, made payable to KHALEL, in exchange for referring Medicare beneficiaries and providing Medicare beneficiary information.

34.    On February 10, 2022 MOHAMED KAZKAZ, paid and caused the payment of approximately $10,000 to ZIAD KHALEL in the form of check number 0697, drawn on JP Morgan Chase Checking Account x0690 held in the name of Centre, made payable to KHALEL's company, in exchange for referring Medicare beneficiaries and providing Medicare beneficiary information.

35.    On or about June 11, 2021, ZIAD KHALEL met with M.H. a recruited Medicare beneficiary, and requested M.H. sign blank Centre sign-in sheets.

36.    On June 29, 2021, MOHAMED KAZKAZ, paid and caused the payment of approximately $7,350.00 to ZIAD KHALEL in the form of check number 0291, drawn on JP Morgan Chase Bank checking account x0690, held in the name of Centre, made payable to KHALEL's company IPACK, in exchange for referring Medicare beneficiaries and providing Medicare beneficiary information.

37.    On or about November 15, 2021, ZIAD KHALEL met with N.M. a recruited Medicare beneficiary, and requested N.M. sign blank Centre sign-in sheets.

38.    On or about November 15, 2021, ZIAD KHALEL met with K.M. a recruited Medicare beneficiary, and requested K.M. sign blank Centre sign-in sheets.

39.    On November 3, 2021, ZIAD KHALEL, paid and caused the payment of approximately $100.00 to M.H. a recruited Medicare beneficiary in the form of check number 2081, drawn on Flagstar Bank Checking Account x3128, held in the name of IPACK, made payable to M.H. as compensation for signing blank Centre sign-in sheets.

All in violation of Title 18, United States Code, Section 371.

<u>**Counts 3-4**</u>
**42 U.S.C. § 1320a-7b(b)(2)(A)—Payment of Kickbacks and Bribes in Connection with a Federal Health Care Program**

**D-1 MOHAMED KAZKAZ**
**D-2 ZIAD KHALEL**

40.    Paragraphs 1 through 15, 17 through 24 and 28 through 31 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

41.    On or about the dates set forth below, in Oakland County, in the Eastern District of Michigan, and elsewhere, MOHAMED KAZKAZ and ZIAD KHALEL, did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Payment | Description | To | From | Approximate Amount |
|-------|------------------------------|-------------|--------|-------------|--------------------|
| 3 | August 3, 2018 | Check | KHALEL | CENTRE HRW | $400.00 |

| Count | Approximate Date of Payment | Description | To | From | Approximate Amount |
|-------|------------------------------|-------------|----------|-------------|---------------------|
| 4 | February 10, 2022 | Check | IPACK LLC | CENTRE HRW | $10,000.00 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

**COUNTS 5 - 10**
**Engaging In Monetary Transactions Exceeding $10,000 in**
**Criminally Derived Property**
**(18 USC § 1957)**

**D-1 MOHAMED KAZKAZ**

Paragraphs 1 through 15 of the General Allegations of the Indictment are realleged and incorporated by reference as though fully set forth herein.

42.    On or about the dates set forth below, in the Eastern District of Michigan, and elsewhere, defendant MOHAMED KAZKAZ did knowingly engage or attempt to engage in the following monetary transactions, by and through a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the, transfer of funds, such property having been derived from a specified unlawful activity, specifically a conspiracy to commit health care ~~wire~~ fraud a conspiracy to commit health care kickbacks:

| COUNT | DATE (On or about) | TRANSFER AMOUNT |
|---|---|---|
| 5 | January 25, 2022 | $70,000 to JP Morgan Chase Bank Account No. X609 held in the name of Kaz Kaz Art Gallery, LLC. (Online transaction number X278) |
| 6 | December 28, 2021 | $55,000 to JP Morgan Chase Bank Account No. X616 held in the name of Kaz Karing Homes, LLC. (Online transaction number X413) |
| 7 | January 18, 2023 | $779,000 in cashier's check to Mohamad Kazkaz from Centre Bank Account x690 |
| 8 | January 18, 2023 | $500,000 in cashier's check to Mohamad Kazkaz from Centre Bank Account x732 |
| 9 | January 21, 2023 | $1,445,000 in cashier's check to National Restaurant Chain #1 remitted by Mohamad Kazkaz |

| COUNT | DATE (On or about) | TRANSFER AMOUNT |
|-------|--------------------|-----------------|
| 10 | January 30, 2023 | $50,000 in cashier's check to Mohamad Kazkaz from Centre Bank Account x690. |

## FORFEITURE ALLEGATIONS

### (18 U.S.C. § 982(a)(7); 18 U.S.C. § 982(a)(1) - Criminal Forfeiture)

43. The allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

44. As a result of the violations alleged in Counts 1 through 4, as set forth in this Indictment, Defendants MOHAMED KAZKAZ and ZIAD KHALEL shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

45. As a result of the violations alleged in Counts 5-10, as set forth in this Indictment, Defendants MOHAMED KAZKAZ and ZIAD KHALEL shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1):

- any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of

17

Defendants' Title 18, United States Code, Sections 1349 and 371, and Title 42, United States Code, Section 1320a-7b offenses; and

- any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957, or any property traceable to such property

46.    The grand jury expressly finds that there is probable cause that a nexus exists between the conduct alleged in Counts 1-4 and funds referenced in Counts 5-10 of the indictment.

Substitute Assets:    If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

a.    Cannot be located upon the exercise of due diligence;

b.    Has been transferred or sold to, or deposited with, a third party;

c.    Has been placed beyond the jurisdiction of the Court;

d.    Has been substantially diminished in value; or

e.    Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek to forfeit any other property of Defendant(s), up to the value of the forfeitable property described above.

47.    Money Judgment:  The government shall also seek a forfeiture money judgment from Defendants for a sum of money representing the total amount of proceeds obtained as a result of Defendant's violations of United States Code, Sections 1349 and 371, and Title 42, United States Code, Section 1320a-7b offenses, as alleged in this Indictment.


THIS IS A TRUE BILL.                         *s/ Grand Jury Foreperson*
                                             Grand Jury Foreperson


DAWN N. ISON
United States Attorney

*s/ Regina R. McCullough*
Regina R. McCullough
Chief, Health Care Fraud
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9618
Regina.McCullough@usdoj.gov


*s/ Philip A. Ross*
Philip A. Ross
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9790
Philip.Ross@usdoj.gov


Date:  March 15, 2023

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>23-CR-20022 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: _PAR_ |

**Case Title:** USA v. <u>MOHAMED KAZKAZ, et al.</u>

FILED USDC - CLRK DET
2023 MAR 15 PM4:18

**County where offense occurred :** <u>Oakland</u>

**Check One:**      ☒Felony           ☐Misdemeanor           ☐Petty

\_\_\_\_Indictment/\_\_\_\_Information --- **no** prior complaint.
\_\_\_\_Indictment/\_\_\_\_Information --- based upon prior complaint [Case number:                    ]
\_✓\_Indictment/\_\_\_\_Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** <u>23-CR-20022</u>           **Judge:** <u>Hon. George Caram Steeh</u>

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| D-1 MOHAMED KAZKAZ | Counts 5, 6, 7, 8, 9, 10. These new counts are all violations of 18 U.S.C. 1957 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

<u>March 15, 2023</u>
Date

Philip A. Ross
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9790
Fax:   313-226-2621
E-Mail address: philip.ross@usdoj.gov
Attorney Bar #:

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.