UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

vs.

D-1 Mohamad Kazkaz,
D-2 Ziad Khalel,

    Defendants.

Case No. 23-cr-20022
Hon. George Caram Steeh

## UNITED STATES'S *EX PARTE* APPLICATION FOR POST-INDICTMENT RESTRAINING ORDER

The United States of America, by and through the United States Attorney for the Eastern District of Michigan Dawn N. Ison and Assistant United States Attorney K. Craig Welkener, makes application to this Court, pursuant to 21 U.S.C. § 853(e)(1)(A), for a restraining order to preserve the availability of certain property that is subject to forfeiture in the above-styled criminal action. In support, the United States says:

    1.    On March 15, 2023, a federal grand jury for this district returned a first superseding indictment. As in the original indictment,

Mohamed Kazkaz and Ziad Khalel stand charged with conspiracy to commit health care fraud (Count 1), conspiracy to pay and receive health care kickbacks (Count 2), payment of kickbacks and bribes in connection with a federal health care program (Counts 3 and 4), and engaging in monetary transactions exceeding $10,000 in criminally derived property (Counts 5-6). *See United States v. Kazkaz et al.*, 23-cr-20022, ECF No. 24. The superseding indictment also added four more counts of engaging in monetary transactions exceeding $10,000 in criminally derived property (Counts 7, 8, 9, and 10). *Id.*

2. The first superseding indictment gives the defendants notice that the United States intends to pursue the forfeiture of assets—pursuant to the provisions of 18 U.S.C. § 982—in which Mohamed Kazkaz and Ziad Khalel holds an interest. In particular, the federal grand jury included an express finding of probable cause to believe that "a nexus exists between the conduct alleged in Counts 1-4 and funds referenced in Counts 5-10," making the funds subject to forfeiture. ECF No. 24, ¶¶ 44-46.

3. As detailed in the attached brief, the federal grand jury's indictment of Mohamed Kazkaz and Ziad Khalel, which specifically identified property as being subject to forfeiture under 18 U.S.C. § 982(a)(1) and 18 U.S.C. 982(a)(7), establishes sufficient probable cause for the issuance of this restraining order.

4. The destruction or the transfer, movement, conveyance, or encumbrance of the subject property by the defendant or any third party could render said property unavailable for forfeiture.

5. Any third-party claims to the subject property may be properly brought and resolved in ancillary proceedings conducted by this Court following the execution of a Preliminary Order of Forfeiture and service of notice to all interested parties in accordance with the provisions of federal forfeiture law.

6. The United States advised counsel for defendant Kazkaz— the Defendant who moved the funds in Counts 5-10—that it would be filing this motion via email on March 16, 2023 at 9:04 AM, and opposing counsel declined to take a position.

                                            Respectfully submitted,

                                            Dawn N. Ison

        United States Attorney

        */s/K. Craig Welkener*
K. Craig Welkener (DC 1033585)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0248
Kenton.Welkener@usdoj.gov
Date: March 16, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

vs.

D-1 Mohamad Kazkaz,
D-2 Ziad Khalel,

    Defendants.

Case No. 23-cr-20022
Hon. George Caram Steeh

**Brief in Support of United States' *Ex Parte* Application for Post-Indictment Restraining Order**

II. **Applicable Law**

Pursuant to 18 U.S.C. § 982(a)(7), a person convicted of a violation of 18 U.S.C. §§ 1349 (Count 1) or 371 (Count 2), or 42 U.S.C. § 1320a-7b (Counts 3-4), in addition to any other penalty, shall forfeit to the United States any property which constitutes and is derived from gross proceeds obtained directly and indirectly that is traceable to the offense. *See also* 18 U.S.C. § 24.  In addition, pursuant to 18 U.S.C. § 982(a)(1), a person convicted of a violation of 18 U.S.C. § 1957 (Counts 5-10), shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

The law provides that the court may enter a restraining order upon the filing of an indictment, in order to assure the availability of property for forfeiture upon conviction. 21 U.S.C. § 853(e)(1)(a statute that is applicable to all criminal forfeitures pursuant to 28 U.S.C. § 2461(c)). Section 853(e)(1)(A), in pertinent part, provides:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property ... for forfeiture under this section–
>
> (A) upon the filing of an indictment or information charging a violation ... for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section[.]

21 U.S.C. § 853(e)(1).

Pre-trial restraint of assets under 21 U.S.C. § 853(e) has been approved by the United States Supreme Court. In *United States v. Monsanto*, 491 U.S. 600 (1989), the district court restrained, under 21 U.S.C. § 853, a defendant from disposing of his house, his apartment

and $35,000 in cash prior to trial. The Supreme Court upheld the pre-trial restraint, noting:

> "[I]t would be odd to conclude that the Government may not restrain property, such as the home and apartment in respondent's possession, based on a finding of probable cause, when we have held that . . ., the Government may restrain *persons* where there is a finding of probable cause to believe that the accused has committed a serious offense."

*Id.* at 615-16 (emphasis in the original). Other courts, including the Sixth Circuit, have recognized the right of the United States to seek pre-trial restraint of forfeitable assets. *United States v. Jamieson*, 427 F.3d 394, 405-407 (6th Cir. 2005) ("The grand jury found probable cause for all of the allegations listed in the indictment, including count 158, which charged Jamieson with conspiracy to commit money laundering involving $ 104 million. The government has therefore made a basic showing of probable cause justifying restraint of Jamieson's assets"); *United States v. Bissell*, 866 F.2d 1343, 1352 (11th Cir. 1989); *United States v. Real Property in Waterboro*, 64 F.3d 752, 755-56 (1st Cir. 1995); *United States v. Jenkins*, 974 F.2d 32, 36 (5th Cir. 1992); *In Re*

*Billman*, 915 F.2d 916, 921 (4th Cir. 1990); *United States v. Regan*, 858 F.2d 115, 120-21 (2d Cir. 1988).

Courts have also made clear that notice and a hearing need not occur before an ex parte restraining order is entered pursuant to section 853(e)(1)(A). *Jamieson*, 427 F.3d at 405-407 (upholding against Sixth Amendment challenge a district court's grant of a restraining order based upon the indictment alone); *Bissell*, 866 F.2d at 1352 (11th Cir. 1989); *see also United States v. Holy Land Foundation for Relief and Development*, 493 F.3d 469, 475 (5th Cir. 2007) (*en banc*) ("a court may issue a restraining order without prior notice or a hearing"); *United States v. Monsanto*, 924 F.2d 1186, 1193 (2d Cir. 1991) (same).

In determining whether to issue a restraining order, the grand jury's return of the first superseding indictment against the defendants establishes probable cause that the charged offenses were committed. *See Jamieson*, 427 F.3d at 405-406 (initial issuance of restraining order found sufficient because it was based on grand jury's finding of probable cause); *United States v. Bollin*, 264 F.3d 391, 421 (4th Cir. 2001) (the grand jury's finding of probable cause is sufficient to satisfy the

8

Government's burden); *United States v. Jones*, 160 F.3d 641, 648 (10th Cir. 1998); *United States v. Moya-Gomez*, 860 F.2d 706, 729 (7th Cir. 1988) (court limits inquiry to forfeiture issues; court does not look behind grand jury's finding with respect to the underlying crime). As noted in the legislative history of the Comprehensive Crime Control Act of 1984:

> For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.

S.Rep. No. 225, 98th Cong., 2d Sess. 203 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3386.

If any third parties have claims on the funds subject to the requested restraint, section 853(n) sets out a specific procedure for the adjudication of such claims. This process begins, however, "[f]ollowing the entry of an order of forfeiture under this section . . . ." 21 U.S.C. § 853(n)(1); *see also Libretti v. United States*, 516 U.S. 29, 44 (1995); *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001) (ancillary proceeding is "exclusive means" for third parties to assert claims to forfeited property; citing legislative history); *United States v. Messino*,

122 F.3d 427, 428 (7th Cir. 1997) (under Sections 853(k) and (n), third parties must wait until the court has entered a preliminary order of forfeiture to challenge the forfeiture action).

In the present case, the federal grand jury's superseding indictment specifically identified property as being subject to forfeiture, establishing sufficient probable cause for the issuance of a restraining order. *See* ECF 24 at ¶¶ 44-46; *Monsanto*, 491 U.S. at 615-16 (holding a showing of probable cause is sufficient to restrain assets under section 853); *Jamieson*, 427 F.3d at 405-407. The United States seeks to preserve the status quo of the subject property to prevent its alienation or dissipation, so that it can be forfeited after trial. *In re Billman*, 915 F.2d at 921. In this case, the subject property is the following (collectively, **the Subject Property**):

- **Count 5 Funds**: $70,000 in funds sent to JP Morgan Chase Bank Account No. X609 on January 25, 2022, an account held in the name of Kaz Kaz Art Gallery, LLC. These funds were sent using online transaction number X278.

- **Count 6 Funds**: $55,000 in funds sent to JP Morgan Chase Bank Account No. X616 on December 28, 2021, an account held in the name of Kaz Karing Homes, LLC.  These funds were sent using online transaction number X413.

- **Count 7 Funds**: $779,000 in funds written by cashier's check to Mohamed Kazkaz from Centre Bank Account x690 on January 18, 2023.  This includes the actual Centre Bank Cashier's Check, dated January 18, 2023, payable to Mohamed Kazkaz in the amount of Seven Hundred and Seventy-Nine Thousand Dollars ($779,000); All Funds on Deposit with Centre Bank Funding and Attributable to that Cashier's Check; and (in the event that check has been deposited) All Funds up to $779,000 traceable to that Cashier's Check.

- **Count 8 Funds**: $500,000 in funds written by cashier's check to Mohamed Kazkaz from Centre Bank Account x732 on January 18, 2023.  This includes the actual Centre Bank Cashier's Check, dated January 18, 2023, payable to Mohamed Kazkaz in the amount of Five Hundred Thousand Dollars ($500,000); All Funds on Deposit with Centre Bank Funding and Attributable to that

Cashier's Check; and (in the event that check has been deposited) All Funds up to $500,000 traceable to that Cashier's Check.

- **Count 9 Funds**: $1,445,000 in funds written by cashier's check to National Restaurant Chain #1 remitted by Mohamed Kazkaz on January 18, 2023. This includes the actual Cashier's Check, dated January 18, 2023, payable to the National Restaurant Chain #1 in the amount of One Million, Four Hundred and Forty-Five Thousand Dollars ($1,445,000); All Funds on Deposit Funding and Attributable to that Cashier's Check; and (in the event that check has been deposited) All Funds up to $1,445,000 traceable to that Cashier's Check.

- **Count 10 Funds**: $50,000 in funds written by cashier's check to Mohamed Kazkaz from Centre Bank Account x690 on January 30, 2023. This includes the actual Centre Bank Cashier's Check, dated January 30, 2023, payable to Mohamed Kazkaz in the amount of Fifty Thousand Dollars ($50,000); All Funds on Deposit with Centre Bank Funding and Attributable to that Cashier's

12

Check; and (in the event that check has been deposited) All Funds up to $50,000 traceable to that Cashier's Check.

This Court has jurisdiction to enter the requested Order "without regard to the location of any property which may be subject to forfeiture under this section . . . ." 21 U.S.C. § 853(l), incorporated by 18 U.S.C. § 982(b)(1).

Wherefore, for the foregoing reasons, the United States requests this Court to enter a protective order immediately restraining, prohibiting, and enjoining Mohamed Kazkaz and Ziad Khalel and any of their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, and those persons, financial institutions, or entities who have any interest or control over the subject property from attempting or completing any action that would affect the availability, marketability or value of said property, including but not limited to selling, assigning, pledging, distributing, encumbering, wasting, secreting or otherwise disposing of, or removing from the jurisdiction of this Court, all or any part of their interest, direct or indirect, in the Subject Property.

The United States further requests that any person or entity who has an interest or control over the Subject Property be required to deliver it to the United States Marshals Service—to be restrained and held in the Seized Asset Deposit Fund—until further order of the Court. It is further requested that each entity from whom the above referenced Cashier's Checks were issued—unless the Cashier's Check was deposited with another entity—be required to re-issue a check for the total amount stated in the Cashier's Check, made payable to the United States Marshal Service (USMS) upon presentation of the Order.

The United States further requests that any financial institutions holding any accounts subject to this Order be prohibited from taking offsets against such accounts, and that they continue to credit any deposits, interest, dividends, or other credits to such accounts in the normal course of business.  In addition, upon receiving notice of this Order, that each financial institution be required to promptly inform the United States as to the account balances at the time of notice, and thereafter supplement such information by reporting to the United States any changes to the accounts, and by responding promptly to

14

requests by the United States for information on the accounts' current status.

The United States further requests a copy of this Restraining Order be served upon Mohamed Kazkaz and Ziad Khalel and a return be made thereon reflecting the date and time of service.

The United States further requests that this Restraining Order remain in full force and effect until further order of this Court.

                                      Respectfully submitted,

                                      Dawn N. Ison
United States Attorney

*/s/K. Craig Welkener*
K. Craig Welkener (DC 1033585)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0248
Kenton.Welkener@usdoj.gov
Date: March 16, 2023