UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

vs.

D-1 Mohamad Kazkaz,
D-2 Ziad Khalel,

    Defendants.

Case No. 23-cr-20022
Hon. Gershwin A. Drain

## UNITED STATES' OPPOSITION TO NATIONAL RESTAURANT CHAIN NO. 1's EMERGENCY MOTION TO MODIFY THE RESTRAINING ORDER

The Court should deny the Emergency Motion for multiple reasons. First, there is a statute that expressly prohibits this type of intervention in a criminal case. 21 U.S.C. 853(k). Second, the proper time for third-party arguments such as those raised here—whether Petitioners[1] are "bona fide purchasers"—is in the ancillary proceeding "following the entry of an order of forfeiture[.]" 21 U.S.C. 853(n). Third, even if the Court proceeds despite these clear statutes to entertain

---

[1] National Restaurant Group #1 refers to itself as "Petitioner," and for ease the Government will do the same.

Petitioner's factual arguments, the motion fails. Petitioner has not proven that the restrained funds have been spent, and sensitive criminal investigative interests would be threatened if the Court allows what amounts to civil litigation about the restrained funds.

## Facts

This is an active criminal investigation.

The original Indictment in January 2023 identified a healthcare fraud scheme that defrauded millions from Medicare. The Grand Jury returned the First Superseding Indictment on March 15, 2023, charging the Defendant Kazkaz money laundering charges in Counts 5-10 and making a probable cause finding making those funds as subject to forfeiture. ECF 24.

The very next day, the Government moved to restrain the funds and order them deposited with the US Marshals for forfeiture adjudication. ECF 26. The Court issued the Post-Indictment Restraining Order on March 30, 2023, restraining the funds involved in Counts 5-10 (hereinafter "Restrained Funds"). ECF 28. The Government served the

2

Order on counsel for Petitioner by Friday March 31st (at the latest) and on Chase Bank on April 4, 2023.

As of April 7, 2023, the Government learned that Chase—based on the Restraining Order and its own tracing of the $1.445 million in Restrained Funds—had placed two holds on two accounts, with an amount for each hold of $1.445 million in theoretical dollars. As of April 7, 2023, frozen account ending in 7885 had an actual balance of $48,353.93 and frozen account ending in 0852 had an actual balance of $67,344.97.

The total amount frozen, as of April 7th, is thus $115,698.90 in actual funds.

Based on the records currently available, the Government cannot verify whether Petitioner has indeed spent any (much less *all*) of the Restrained Funds. Opp. Ex. A, Bertucci Affidavit ¶ 6. Most of the alleged proof that Petitioner offers in support of their claim to having done so consists of checks drawn on non-frozen accounts. *Id.*; Opp. Ex B. In fact, most of the checks seem to come from an account ending in 0326. Opp. Ex. B.

In sum, the two holds at issue may be restraining $115,698.90 in funds that Mr. Kazkaz and others stole from the Medicare trust fund, and which should ultimately be returned to Medicare at the conclusion of this case.

## Argument

### I. 21 U.S.C. 853(k) Expressly Bars This Motion

The law bars third parties from intervening to challenge the forfeiture of property in criminal cases until the ancillary proceeding following the entry of an order of forfeiture. 21 U.S.C. 853(k); *Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012).

> **(k) Bar on intervention.** Except as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may—
> (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

4

21 U.S.C. 853(k). The sub-section (n) cited above is the only way for third parties to adjudicate the validity of interests in property that they claim should not be subject to forfeiture. 21 U.S.C. 853(n); *Brown*, 692 F.3d at 552 ("A third party's only avenue for protecting [its] interest is the procedure set forth in 21 U.S.C. § 853(n), which provides that '[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section' may 'petition the court for a hearing to adjudicate the validity of [its] alleged interest in the property'")(quoting *United States v. Douglas*, 55 F.3d 584, 586 (11th Cir. 1995)).

As *Brown* and other cases have held, 21 U.S.C. 853(k) is a direct ban on third parties litigating their forfeiture claims—in *any* venue—until the ancillary proceeding occurs.[2]

---

[2] While some courts have held that a narrow exception to the absolute bar of 21 U.S.C. § 853 exists, even *those* courts have held that the exception does not allow third parties to contest "the underlying forfeitability of the property." *United States v. Real Prop. in Waterboro*, 64 F.3d 752, 756 (1st Cir. 1995) ("That would turn an ancillary proceeding into the main event -- a result at odds with Congress' desire to 'assure a more orderly disposition of both the criminal case and third party claims.'") (citation omitted). *But see United States v. Bohn*, No. 02-20165 D/P, 2011 U.S. Dist. LEXIS 118539, at *22 (W.D. Tenn. June 27, 2011) (finding that third party's Due Process rights overcome 853(k) after the defendants have been fugitives for nine years).

This statute alone is sufficient to deny the Emergency Motion.

## II. 21 U.S.C. 853(n) Also Bars Petitioner's Arguments

By its express terms, the statute that Petitioner relies on disallows their own claim. Their chief argument is that "property cannot be forfeited if 'the petitioner is a bona fide purchaser for value[.]" Emergency Mot. At 2 (citing 21 U.S.C. 853(n)(6)(B)). But the statute makes it crystal clear that these claims must be heard "following the entry of an order of forfeiture," which extinguishes the defendant's rights to the property and begins the ancillary proceedings where petitioners like Restaurant Chain No. 1 can litigate. 21 U.S.C. 853(n)(1).[3] That has not happened here.

The Rules accompanying the statute make this even more explicit. *See* Fed. R. Crim. Pro. 32.2(b)(2) ("Determining whether a third party has such an interest <u>must be deferred</u> until any third party files a claim in an ancillary proceeding under Rule 32.2(c)") (emphasis added).

---

[3] After that Order, the U.S. publishes notice, *id.*, and petitions "signed … under penalty of perjury" can trigger a hearing. 21 U.S.C. 853(n)(2-5). It is only "after the hearing" in this post-sentence ancillary proceeding that third party claims like Petitioner's are adjudicated. 21 U.S.C. 853(n)(6).

6

Petitioners are trying to play baseball in the wrong ballpark. The game is set for another date.

Thus, the provision for third party rights in § 853(n) is a perfect counterpart to the ban on third party intervention in § 853(k). Third party rights are adjudicated in the ancillary proceeding after a "order of forfeiture," 21 U.S.C. § 853(n), but are otherwise prohibited. 21 U.S.C. 853(k); *Brown*, 692 F.3d at 552; *see also* Fed. R. Crim. Pro. 32.2(b)(2).

Nor can the Emergency Motion succeed by showing that the Restraining Order is restraining substitute assets. That would require a showing that the Restraining Order is impacting untainted property that *belongs to Defendant Kazkaz*.[4] But that is actually the opposite of what

---

[4] *See, e.g., United States v. Stark*, No. 03-CR-30190-MJR, 2011 U.S. Dist. LEXIS 129896, 2011 WL 544057, at *1-2 (S.D. Ill. Nov. 9, 2011) (denying the defendant's motion to vacate the order of forfeiture of substitute property because the defendant did not have standing based on his disavowal of ownership interest in the substitute property); *United States v. Tremblay*, No. S1 05 CR.783 JFK, 2008 U.S. Dist. LEXIS 81322, 2008 WL 4571548, at *1-2 (S.D.N.Y. Oct. 10, 2008) (holding that the defendant lacks standing to challenge an order forfeiting as substitute property funds in his company's Bahamian bank accounts on the ground that those funds belong to the company's clients); *United States v. Weidner*, No. 02-40140-01-JAR, 2004 U.S. Dist. LEXIS 3474, 2004 WL 432251, at * 5 (D. Kan. Mar. 4, 2004) (granting the government's motion to substitute property over the defendant's objection and recognizing that the defendant lacks standing and "cannot

Petitioner claims – they claim that the frozen funds do *not* belong to Kazkaz, and all of the restrained funds were spent. Petitioner lacks standing to make a substitute asset argument on behalf of Defendant Kazkaz,[5] and that argument is barred by 853(k) and (n) as detailed above in any case.

## III.  In the Alternative, Factual Evidence Requires Denial

The Emergency Motion should be denied as a matter of law. The Government's position is that it would be illegal for Petitioner to ask the Court for a factual hearing on these matters, due to 853(k) and (n).

But in the alternative, the Emergency Motion should be denied for two basic factual reasons: (1) the Government is still investigating whether the Restrained Funds reside in the frozen accounts, and (2) litigating the Emergency Motion's factual claims would inappropriately expose an ongoing criminal investigation to essentially civil litigation.

---

contest forfeiture on the grounds that the subject property is owned by a third party")
[5] See cases cited in n. 3 above.

### A. The Frozen Accounts May Hold Restrained Funds

As Mr. Bertucci's Affidavit explains, "the Government cannot verify whether National Restaurant Chain #1 has indeed spent the $1,445,000. The transaction records they offer do not appear to be drawn on the account ending in 0852 to which we have traced the funds thus far." Opp. Ex. A ¶ 6.

National Restaurant Chain #1 is required to provide records underlying this transaction on April 12, 2023, and Chase Bank should also provide underlying bank records that would allow the FBI to determine where the Restrained Funds went. For now, most of the alleged proof that Petitioner offers in support of their claim to having spent this money so consists of checks drawn on <u>non-frozen</u> accounts. *Id.*; Opp. Ex B. In fact, most of the checks seem to come from an account ending in 0326. Opp. Ex. B.

And as a legal matter, the Government needs to have the records to determine where the Restrained Funds have gone. When tracing funds, courts have given the government flexibility to choose among various accounting approaches. *See, e.g. Banco Cafetero*, 797 F.2d at 1160 (the correct accounting "approach reflects reality in any particular case will

depend on the precise circumstances"); *see also In Re Moffitt, Zwerling & Kemler, P.C.*, 875 F. Supp. 1152, 1159 (E.D.Va.1995)( "when tracing commingled funds, the government is accorded flexibility to choose among various accounting approaches"), *aff'd in part and rev'd in part on other grounds*, 83 F.3d 660 (4th Cir.1996).

The Restrained Funds are subject to forfeiture. The Petitioner should not be allowed to run their restaurants with funds that may or may not belong to the victims of crime.

### B. Litigating Now Endangers the Criminal Investigation

Finally, a full evidentiary hearing now would be grossly premature. Not just because of the statutory ban in 853(k), or because it violates the procedures in 853(n). Rather, doing so would also require the Government to bring witnesses and evidence *while the investigation is ongoing.* To have a public hearing on whether these funds are traceable to the underlying crimes, and whether Petitioner is a bona fide purchaser, would require the Government to expose facts to the public that might risk the objectives of forfeiture law and criminal law generally. The Government intends to file a motion seeking permission

10

to file an affidavit under seal detailing these concerns, before the hearing on April 11, 2023 at 4pm.

## **Conclusion**

The United States requests that the Court deny the Emergency Motion and allow the Restraining Order to remain in full force and effect until further order of this Court.

                                     Respectfully submitted,

                                     Dawn N. Ison
                                     United States Attorney

                                     */s/K. Craig Welkener*
                                     K. Craig Welkener (DC 1033585)
                                     Assistant United States Attorney
                                     211 W. Fort Street, Suite 2001
                                     Detroit, MI 48226
                                     (313) 226-0248
                                     Kenton.Welkener@usdoj.gov
                                     Date: April 10, 2023