UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff/ Respondent,        Case No. 2:23-cr-20022

v.

        Hon. Gershwin A. Drain

D-1 MOHAMED KAZKAZ,
D-2 ZIAD KHALEL,

        Defendants,

NATIONAL RESTAURANT CHAIN NO. 1,

        Petitioner.

---

**National Restaurant Chain No. 1's Supplemental Brief in Support of their Motion to Modify Post-Indictment Restraining Order and Release Their Funds/Substitute Property**

---

By Order of this Court, this supplemental brief answers the question: *Whether a showing of irreparable harm by a third party permits the Court to modify the post-indictment restraining order before a criminal conviction and order of forfeiture has been entered in this case?*

Upon a satisfactory showing of irreparable harm, due process requires a district court to hear a third-party challenge to a restraining order. Courts commonly

1

invoke tests that balance the third party's interest in a pretrial adjudication with the government's interest in postponing the adjudication until the ancillary proceeding. *Petters*, 2009 WL 1794799, at *4. The Supreme Court held that "some form of hearing is required **before** an individual is finally deprived of a property interest." *Mathews vs. Elridge*, 424 US 319, 333; 47 L Ed2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard **'at a meaningful time and in a meaningful manner.'"** *Id. (emphasis added)*. Petitioner's due process rights have been violated by the restraints placed on its bank accounts.

## Statement of Facts

In attempting to restrain funds that the United States believe are traceable to fraud, the United States has now "frozen" nearly every bank account of a bona fide third-party purchaser, identified as National Restaurant Chain No. 1 ("Third Party" and/or "Petitioner"). The United States' actions, if not immediately reversed, will force a near 90-year-old restaurant chain with 28 stores, to cease operations, leading to the loss of jobs and catastrophic damages.

Despite the entrance of the Post-Indictment Restraining Order on March 30, 2023, there has been no warrant or judicial order authorizing the *continued* seizure of Petitioner's accounts. The Order simply authorized the restraint of funds "traceable" to the $1.445 Million cashier check. In its Opposition to Petitioner's Emergency Motion, the United States admits that it had only identified 2 accounts

2

that touched the funds and neither account contains the $1.445 Million identified in the Judge's order. On page three (un-numbered) of the United States' Brief in Opposition, they state the following:

> "As of April 7, 2023, the Government learned that Chase—*based on the Restraining Order and its own tracing of the $1.445 million in Restrained Fund*s—had placed two holds on two accounts, with an amount for each hold of $1.445 million in theoretical dollars. As of April 7, 2023, frozen account ending in 7885 had an actual balance of $48,353.93 and frozen account ending in 0852 had an actual balance of $67,344.97.
>
> The total amount frozen, as of April 7th, is thus $115,698.90 in actual funds."

Despite National Restaurant Chain No. 1's compliance with a Subpoena, its voluntary participation in meetings/briefings with Assistant U.S. Attorneys, FBI agents, and their contemporaneous document productions and communication with the United States (through counsel), the Government has frozen at least five (5) additional bank accounts owned by the Petitioner since the April 14th Emergency Hearing.

Due to the Petitioner's compliance with the government, there can remain no questions as to the status of the *restrained funds*. In support of the government's

motion opposing Petitioner's emergency motion, Agent Bertucci provided an affidavit stating: *"based on the records currently available, the Government cannot verify whether National Restaurant Chain #1 has indeed spent the $1,445,000. The transaction records they offer do not appear to be drawn on the account ending in 0852 to which we have traced the funds thus far."*[1] The government has now had ample time to analyze all bank statements, canceled checks, wire transfers, and electronic payments. Again, there can be no reasonable question as to whether any restrained funds reside in the Petitioner's accounts. Moreover, Petitioner also provided the government with its own analysis of the cash trail which establishes that the $1,445,000 received from Defendant Kaszkaz was spent. Using the FIFO method, Petitioner has demonstrated that the money received from the Defendant was completely transferred out of National Restaurant Chain No. 1's accounts by February 15, 2023, more than one month prior to the Post-Indictment Restraining Order.

As communicated to the United States on several occasions, the money received by Defendant, Kazkaz was spent by the Petitioner prior to receiving notice of the entry of the Post-Indictment Restraining Order. Despite this lack of notice, National Restaurant Chain No. 1 has communicated to the government their willingness to secure the government's interest in the 1.445 Million Dollars. This

---

[1] See, Exhibit A to United States 'Opposition to Petitioner's Emergency Motion

4

includes but is not limited to making payments to the US Marshall, and all money that Kazkaz otherwise would have been entitled to receive from Petitioner.

## Argument

I. **National Restaurant Chain No. 1 Is A Bona Fide Purchaser Who Will Suffer Irreparable Harm If The Restraining Order Is Not Modified**

Petitioner purchased restaurant equipment and fixtures with Defendant Kazkaz's money pursuant to a legitimate business purpose. By freezing seven (7) bank accounts, the United States is effectively preventing National Restaurant Chain No.1 from operating and is therefore seizing substitute property.

The deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Hernandez v Sessions*, 872 F3d 976, 994 (9th Cir. 2017). In *Bell vs. Burson*, 402 US 535, 539; 91 SCt 1589, 29 L.Ed2d 90 (1971), the Court held that revoking a doctor's license to practice medicine and **earn a livelihood** was "the necessary showing of a deprivation of a constitutionally protected interest . . . continued possession may become essential in the pursuit of a livelihood." Further, in *B&B Target Ctr., Inc. vs. Figueroa-Sancha*, 871 FSupp2d 71 (Puerto Rico District Court – July 3, 2102), the plaintiffs challenged revocation of their gunsmith license. The court held that the plaintiffs' "license was a property interest by the Due Process clause of the Fourteenth Amendment because it was **essential to its livelihood**. *Id*. at 78. B&B alleged lost income, faced lawsuits from customers, and suffered a

decline in their reputation. *Id.* "These negative consequences on the plaintiff's livelihood . . . sufficiently establish that B&B's license is a protected property interest." *Id.* In regard to the risk of an erroneous deprivation, whether the deprivation was actually erroneous is beside the procedural due process point, the court must examine the fairness of the protocol and the risks of a lasting erroneous deprivation. *Id*. citing *Amsden v. Moran,* 904 F2d 748, 753-54 (1st Cir. 1990).

Therefore, the Petitioner's interest is one concerning a constitutionally protected right to livelihood and protected under the Due Process Clause. Also, the deprivation of Petitioner to access their funds and the substitute property constitutes irreparable injury. In the case at bar, in the days that followed the March 14th Emergency Hearing, the holds have had near catastrophic effect on the Petitioner's livelihood and ability to conduct business. Since the holds pursuant to the Restraining Order took effect, Petitioner has received dozens of notices, emails, and communications of returned checks, bounced checks, and NSF fees. The amount of returned and bounced checks, including NSF fees amount to over $105,000. **(Exhibit A, Bounced & Returned Checks)**. Petitioner has received a Shut Off or Past Due Notices for EVERY STORE owned by National Restaurant Chain No. 1. **(Exhibit B, Utility Shut Off Notices)**. Since the Post-Indictment Restraining Order, Defendant has received multiple Notices of Default payments to their vendors and landlords. **(See Exhibit C, Vendor Notices).** Finally, since the Restraining Order

was issued, Petitioner has discovered that there remains nearly $60,000 in outstanding checks to "Food Groups" that will not be honored by their bank due to the existing holds. **(Exhibit D, Outstanding Food Group Checks)**.

Courts have also held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon violation of the plaintiff's constitutional rights. *See, e.g., Connection Distrib. Co. v. Reno*, 154 F.3rd 281, 288 (6th Cir. 1998). As demonstrated, the holds placed on Petitioner's accounts violate their constitutional rights and creates irreparable harm by choking the lifeline - cash flow - of this 89-year-old business.

1. **The United States' 21 U.S.C 853(n) Argument**

The government argues that the statute "makes it crystal clear that these claims must be heard "following the entry of an order of forfeiture."[2] The United States' argument completely ignores the constitutional violations that exist because of the irreparable harm imposed on the Petitioner pursuant to the Restraining Order. The government need not take possession of or title to property to "seize" it; interference with the target's possessory interest triggers Fourth Amendment scrutiny. *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F.Supp.2d 857 (N.D. Ohio

---

[2] See, Argument II (page 6) – United States' Opposition to Petitioner's Emergency Motion

2009). Generally, the Fourth Amendment permits seizures only on the basis of probable cause and a judicial warrant listing, with particularity, the item or items to be seized. *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637 (1983). In the instant case, the United States' actions are clearly beyond the authority authorized by the Post-Indictment Restraining Order.

## II. The Funds Traceable To The 1.445 Million Dollars Have Been Disbursed

While allegedly "tainted" funds were received by the Third Party from a defendant, those funds were spent on restaurant equipment and fixtures before the Petitioner had notice of this Court's Order. Thus, the United States has impermissibly restrained a third party's "substitute assets," which is not allowed in the Sixth Circuit. Because the money has been disbursed, by freezing of Petitioner's bank accounts, the United States has restrained "substitute property" rather than property traced back to the fraud. See, 21 USC §853(p).

The restraint on National Restaurant Chain No. 1's bank accounts are beyond the powers of the United States at this time. The Sixth Circuit has held that federal prosecutors may not restrain substitute assets prior to trial. *United States v. Parrett*, 530 F.3d 422 (6th Cir. 2008). Most other circuits agree. *See United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007) ("the United States does not have a ripened interest in ... substitute property until (1) after a defendant's conviction and (2) the court determines the [tainted] property is out of the government's reach for a reason

8

enumerated in [the statute]."); *United States v. Field*, 62 F.3d 246, 249 (8th Cir. 1995) (refusing to permit pretrial restraint of substitute assets under §853(e)(1)); *United States v. Ripinsky*, 20 F.3d 359, 363-64 (9th Cir. 1994) (same); *United States v. Gotti*, 155 F.3d 144, 148-50 (2d Cir. 1998) (refusing to permit retrial restraint of substitute assets under 18 U.S.C. §1963); *In re Assets of Martin*, 1 F.3d 1351, 1359 (3d Cir. 1993) (same). Specifically, *Parrett* held that "21 USC §853 does not provide authorization for the federal government to place restraints on substitute property prior to entry of an order of forfeiture." *Id*.

Petitioners have not only provided the government with all of the pertinent bank statements, general ledgers, outstanding and canceled checks that conclusively establish that the Kazkaz money has been disbursed, it has also provided the United States with its own Cash Trail Audit of the funds at issue. **(Exhibit E, Cash Trail)**. Accordingly, there exist no honest inquiry as to whether Petitioner remains in possession of money traceable to the 1.445 Million Dollars.

### III. *The Irreparable Harm Imposed On Petitioner Entitles Them To Be Heard.*

When the Government seeks forfeiture and secures an indictment to that effect based on probable cause, a court may issue a restraining order without prior notice or a hearing. *United States v. Holy Land Foundation for Relief & Development,* 493 F3d 469, 475 (5th Cir. 2007). "In some cases, however, due process will require that

the district court then promptly hold a hearing at which the property owner can contest the restraining order, without waiting until trial to do so." *Id*.

### 1. Elridge Factors

Most of the Circuits that have addressed this issue, "rely on the time-honored test of *Mathew v. Elridge*, 424 US 319, 335; 96 SCt 893; 47 LE2d 18 (1976) to determine when a hearing is required." Id. at 475; *See, United States v. Jones*, 160 F.3d 641, 645-48 (10th Cir. 1998)(due process requires pretrial hearing where defendant funds were to pay defense counsel and ordinary and necessary expenses); *United States v. Monsanto*, 924 F.2d 1186, 1193-98 (2d Cir 1991) (on remand from 491 US 600; 109 S Ct 2657; 105 L.Ed 2d 512 (1989)) (funds used for counsel of choice pretrial hearing); *United States v. Moya-Gomez*, 860 F2d 706, 729-30 (7th Cir. 1988); *United States v. Harvey*, 814 F.2d 905, 928-29 (4th Cir. 1987), superceded as to other issues, *In re Forfeiture Hearing As to Caplin & Drysdale, Chartered*, 837 F2d 637 (4th Cir 1988) (en banc), aff'd, 491 US 617; 109 S.Ct 2646; 109 S.Ct 2667; 105 L.Ed 2d 528 (1989). Under the three *Eldridge* factors, a court must consider "the private interest that will be affected by the restraint; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the burdens that the hearing would entail." *Id*. citing *Matthews v. Elridge*, 424 US 319, 335; 96 S.Ct 893; 47 L.E2d 18 (1976).

### *A. Under the Elridge factors, Petitioner is entitled to a pre-trial hearing for which irreparable harm should be considered.*

As to the first factor, the private interest at stake for National Chain No. 1 is the fact that they have already been materially affected by the restraint on their bank accounts. This hardship has already caused the company to experience severe financial distress and has caused irreparable harm to their business relationships, property, reputation, and potentially leading to its collapse. **(Exhibit F – Akeel Affidavit).** Although this court set a scope of addressing "irreparable harm," the legal standard does not allow us to address it singularly. Thus, we also address the remaining *Elridge* factors.

As to the second factor, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," the Petitioner's risk of erroneous deprivation is almost certain where the property in question is not subject to forfeiture as substitute property and they are a bona fide purchaser for value. Although 21 USC §853(p) provides that under certain circumstances the Government may seek forfeiture of "substitute property" of the defendant himself, the statute does not authorize the Government to recover substitute assets of a third party who has dissipated the property. *Parrett, supra*; *United States v. McCorkle*, 321 F3d 1292, 1298 (11 Cir. 2003). In the case at bar, National Restaurant Chain No. 1 has completely dissipated the property. "The term bona fide purchaser is generally understood to mean one

who purchased property for value without notice of any defects in the title of the seller." *In re Walter*, 45 F.3d 1023, 1030 (6th Cir. 1995) quoting Black's Law Dictionary 177 (6th ed. 1990). In *United States v. Parenteau*, 647 Fed.Appx 601(6th Cir. 2016). **(Exhibit G, *Parenteau*),** Section 853 provides that all right, title, and interest in property subject to forfeiture vests in the United States upon the commission of the act giving rise to forfeiture under this section. *Id.* at 604 (quoting 21 USC 853(c). Two subsections in §853(n), however, provide a way for innocent petitioners to avoid the effect of §853(c)'s relation-back clause and remove their property from the forfeiture order. *Id*. Provision §853(n)(6)(B) requires a petitioner to prove by a preponderance of the evidence that he is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section. *Id*. "Without cause" is whether a petitioner had cause to believe that the property was involved in the criminal offense or was traceable to property involved in that offense. *Parenteau, supra*, 607.

As previously stated, Petitioner's interest was obtained in November of 2022 pursuant to a lease-back contractual agreement, well before the indictment of Defendant, Mohamed Kazkaz.[3] Therefore, Petitioner was a bona fide purchaser

---

[3] See, Exhibit C, Attached to Emergency Motion

for value of the right/interest in the property and at the time of purchase was reasonably without cause to believe that the funds were subject to forfeiture.

Finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail are minimal in this case, where the proofs are evident that the funds have been converted into Substitute Property and the Government has no authority to seize it.

Therefore, all of the Eldridge factors favor National Restaurant Chain No. 1 and relief is warranted. The probative value of an evidentiary hearing or even an oral presentation here is substantial where the restraint on subject properties have already caused irreparable harm.

## **Conclusion**

The Petitioner has demonstrated that the constitutional violation(s) suffered by National Restaurant Chain No. 1 creates the irreparable harm that justifies the Court to modify the post-indictment restraining order entered on March 30, 2023. Accordingly, Petitioner renews its request that the Post-Indictment Restraining Order by modified as to Third Party, such that:

    a. The only property of Third Party subject to the Court's order is the equipment and fixtures purchased from the proceeds of the Kazkaz check.

b. The United States may not restrain other property of the Third Party, and must remove any liens, holds or other restrictions on such property.

c. As to the equipment and fixtures, Third Party is ordered to safeguard the property, not move, remove, or damage the property, keep the property insured, and allow the United States to inspect the property.

d. Third Party may continue its use of the property but must remit $10,000 per month to the care of the US Marshall until further order of the Court.

                                            Respectfully Submitted,
                                            SCHENK & BRUETSCH, PLC
                                            Attorneys for Petitioner

                                            /s/ David W. Jones
                                            By: David W. Jones (P57103)
                                            Thomas P. Bruetsch (P57473)
                                            211 W. Fort Street, Suite 1410
                                            Detroit, MI 48226
                                            (313) 774-1000
                                            david.jones@sbdetroit.com
                                            thomas.bruetsch@sbdetroit.com

Dated: April 25, 2023