UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

 Plaintiff/Respondent

vs.

D-1 MOHAMED KAZKAZ,
D-2 ZIAD KHALEL,

 Defendants,

NATIONAL RESTAURANT CHAIN NO. 1;

 Restaurant Group Petitioner,

[]ADVERTISING & PRODUCTION FUND,
INC., a domestic nonprofit corporation; []
FOOD GROUP, LLC,  a domestic company; [FHL],
LLC, a domestic company; [] REAL ESTATE
DEVELOPMENT, LLC, a domestic company; and
CHAIRMAN, an individual,

 Non-Restaurant Group Petitioners.
_____/

Case No. 23-cr-20022

Hon. Gershwin A. Drain

**<u>NATIONAL RESTAURANT CHAIN NO. 1'S REPLY BRIEF IN SUPPORT OF ITS SUPPLEMENTAL MOTION FOR MODIFICATION OF THE POST-INDICTMENT RESTRAINING ORDER, FOR THE IMMEDIATE RELEASE AND/OR RETURN OF PROPERTY ILLEGALLY SEIZED THEREBY, AND FOR A HEARING</u>**

{H1003563.7}

In its response brief, the United States of America (the "Government") baldly mischaracterizes the National Restaurant Chain No. 1's ("Restaurant Group Petitioner" or "Petitioner," generally) above-captioned supplemental motion (misnaming it as a "Third Motion for the Return of Property") as a "third effort to spend funds traceable to money that Defendant Kazkaz ["Kazkaz"] defrauded from Medicare," arguing that such a motion "fails on the law and the facts." ECF No. 103, PageID.945. The very point of Petitioner's motion is that funds that the Government has seized are not, in fact, traceable to such money from Kazkaz (*i.e.,* the $1,445,000 cashier's check that Kazkaz remitted to Petitioner (the "Check")) such that the Government is unlawfully seizing Petitioner's untainted property and, in doing so, is clearly exceeding the authority set forth in the Court's Post-Indictment Restraining Order ("Restraining Order"). According to the Government, even if that were the case, neither Petitioner nor this Court can do anything about it at this stage. The Government's opposition, however, is what "fails on the law and the facts."

First, the Government erroneously claims that, for Petitioner, "the emergency is over" because the Government has lifted all the holds on Petitioner's bank accounts[1] and "the precise funds sought in these motions is now named in a Bill of Particulars." *Id.*, PageID.945-48. The financial crisis the Government has

---

[1] The Government still has holds on two bank accounts belonging to Non-Restaurant Group Petitioners, *see* ECF No. 103, PageID.946, and who is to say what additional bank account holds the Government will unilaterally see fit to place in the future.

{H1003563.7}

wrongfully placed Petitioner in is far from over. Indeed, as the Government otherwise acknowledges, it only lifted those bank holds after, without any probable cause determinations, it recently withdrew $358,108.82 from Petitioner's bank accounts and deposited it with the U.S. Marshall Service. *See id.,* PageID.946. Along with the $67,344.93 previously seized from Petitioner's Chase account ending in "0852" ("Savings Account") on April 6, 2023, the Government, on May 30, 2023, withdrew $54,499.93 from Petitioner's Chase account ending in "7885" ("Checking Account"), $285,000 from Petitioner's Chase account ending in "7893" ("General Operating Account"), and $18,608.89 from Petitioner's Chase account ending in "7935" ("Holding Account"). *See e.g.,* ECF No. 102, PageID.942.

Thus, any suggestion by the Government that Petitioner's motion is somehow now moot strains all credulity. *See* ECF No. 103, PageId.948-49. Rather, with the Government's continued unconstitutional unilateral seizure of $425,453.75 without a probable cause showing of traceability is still a very real injury to Petitioner, and is one the Court does, in fact, have the authority to remedy,[2] especially since the

---

[2] The injury – unreasonable seizure – involves constitutional violations which by definition constitute irreparable harm, triggering the Court's equitable jurisdiction. (Where irreparable harm is based upon a violation of a plaintiff's constitutional rights, that violation, no matter how temporary, is sufficient to show irreparable harm. *See Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 578 (6th Cir. 2002); *Planned Parenthood Southwest Ohio Region v. Hodges*, 138 F.Supp.3d 948, 960 (S.D. Ohio 2015) ("[W]hen a constitutional right is being threatened or impaired, a finding of irreparable harm is mandated.") Hartman v. Acton, 613 F. Supp. 3d 1015, 1025 (S.D. Ohio 2020)

Government is purportedly acting solely under the authority of the Court's Restraining Order to seize the funds.

The fact that the Government just filed a "First Forfeiture Bill of Particulars" that includes these funds for the purpose of providing Kazkaz "notice of [the] specific property that the government intends to forfeit upon conviction" (ECF No. 102, PageID.939, 942) is irrelevant to Petitioner's motion. There still has been no probable cause finding—whether by the grand jury or this Court—as to the actual traceability or tainted nature of Petitioner's seized funds. The Bill of Particulars—whose purpose is to provide notice—is merely a Government filing cursorily claiming the alleged forfeitability of Petitioner's seized funds, without the requisite finding of probable cause.

Second, no such probable cause showing could be made here since Petitioner—long before the Court's March 30, 2023, Restraining Order or any notice of the forfeitability of the Check and funds "traceable" thereto[3]—had disbursed or spent all the funds from the Check in the ordinary course of its business. *See e.g.,* ECF No. 81, PageID.658, 660, 663-666; ECF No. 81-4, PageID.701-09; ECF No. 81-8, PageID.731; ECF No. 95-2. The Government, citing to the Second Affidavit of Giorgio Bertucci (ECF No. 103-1), contends that Petitioner's seized funds are

---

[3] The Court's Restraining Order did not specify a particular tracing method but undoubtedly, it does not permit the Government's use of a tracing method that attempts to convert untainted funds into tainted funds, as that would be unlawful and unconstitutional if applied here.

"traceable" to the Check pursuant to "an initial analysis of the bank records received thus far, using *a version* of the lowest intermediate balance rule." ECF No. 103, PageID.946 (emphasis added). The affidavit, which purports to determine various totals of "restrained funds" that "moved" from Petitioner's Savings and/or Checking Accounts into each of Petitioner's Checking Account, General Operating Account, and Holding Account, merely states that "[a]ll totals…reflect transactions occurring between January 24, 2023, and March 31, 2023," without more; it does not even specify what, if any, amount of the "restrained funds" remained in each account at the time of seizure. *Id.*, PageID.960 (simply concluding that "restrained funds remained in company bank accounts as of March 31, 2023"). Thus, the Bertucci affidavit only takes the first step in any tracing analysis—tracing the money into the accounts—but is noticeably silent as to how much, if any, of alleged tainted funds, as opposed to untainted funds, were in the accounts at the time of seizure.

A brief discussion of Petitioner's General Operating Account ("GOA") illustrates the problematic and flawed nature of Bertucci's affidavit as well as the Government's actions and reliance on it. The Government placed a hold on the GOA in the amount of $405,000 on April 21, 2023. Bertucci's affidavit merely states that (on some unspecified date) $270,000 and $15,000 in restrained funds moved into that account from the Savings and Checking Accounts, respectively, for a total of $285,000. *Id.* The Government, on May 30, 2023, seized $285,000 from the GOA.

*See e.g.,* ECF No. 102, PageID.942. Yet, this withdrawn amount clearly includes $258,276.84 in untainted funds, a Pepsi rebate that Petitioner received on April 21, 2023.[4]

Third, the Government contends that this Court lacks jurisdiction to grant Petitioner's requested relief arguing the motion purportedly relies upon only Rule 41(g) and certain Sixth Circuit case law forecloses the requested relief under that Rule (*i.e.,* that courts must decline to exercise civil equitable jurisdiction over a Rule 41(g) motion where an adequate remedy at law, such as the ancillary proceeding under 21 U.S.C. § 853(n), exists). ECF No. 103, PageID.945, 949-52. Regardless of whether Petitioner was "*also* relying upon all the grounds set forth in Non-Restaurant Group Petitioners' Emergency Motion," *see* ECF No. 95, PageID.920 n.6 (emphasis added), Petitioner's motion clearly relies upon, for the requested relief, the Court's inherent and statutory authority with respect to its own Restraining Order under 21 U.S.C. § 853(e)—which, raises a significant legal issue (one that was never at issue in any of the cases cited by the Government).[5] Thus, Petitioner's

---

[4] The Government seized funds in April and May without sufficient evidentiary basis. It cannot seize (those) funds without the requisite probable cause showing that the funds are actually tainted in the first place—which cannot be established here.

[5] *See e.g., In re $100,622.44 in U.S. Currency v. U.S.,* No. 19-mc-51236, 2019 U.S. Dist. Lexis 213918, at *1-5 (E.D. Mich. Dec. 12, 2019)(where the DEA seized money from movant (not a third party) but failed to either file a civil forfeiture complaint or return the money, movant filed a civil Complaint for Equitable Relief and Amended Motion for Return of Property under Rule 41(g), after which movant was indicted on drug charges, and the Government sought forfeiture under 21 U.S.C. §§ 853 and 2461(c) and filed a bill of particulars that included that seized money,

dismissing the civil case without prejudice and reasoning only that, before movant was indicted, "equitable principles may very well have favored the exercise of jurisdiction," but "[n]ow that [movant] has been indicted, he must pursue his claims, if at all, in his criminal case"; movant "has an adequate remedy at law" via his criminal case; and "[h]e may file a Rule 41(g) motion in his criminal case contesting the[] seizure"); *Brown v. U.S.*, 692 F.3d 550, 551 (6th Cir. 2012)(where a criminal defendant stored drug proceeds in a safe at movant's residence, where law enforcement, with consent, seized money from the safe, where the Government subsequently filed a bill of particulars identifying that money as forfeitable in the criminal case, and where movant filed against the Government a separate civil complaint and Rule 41(g) motion for the return of the money, holding that: 1) "[b]ecause [movant] brought this suit after the [G]overnment filed the indictment and bill of particulars in [defendant's] criminal case, her suit is barred by [21 U.S.C.] § 853(k)(2)" (which provides that, "[e]xcept as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may. . . commence *an action at law or equity against the United States* concerning the validity of his alleged interest in the property…"); and 2) movant's motion for equitable relief under Rule 41(g) "fails because she has an adequate remedy at law" under 21 U.S.C. § 853(n)); *Shaw v. U.S.*, 891 F.2d 602 (1989)(holding that, "[o]nce the government initiated civil [forfeiture] proceedings against [movant], she was required to follow the statutory procedures" governing such forfeiture as set out in 19 U.S.C. §§ 1608 and 1618 and cannot "ignore[] those procedures and [seek] to use the equitable remedy [under now Rule 41(g)] rather than pursuing the legal remedy").

Further, to the extent that the Government, relying upon *Brown*, suggests that this motion is barred by § 853(k)(2), *see* ECF No. 103, PageID.951, *Brown* makes clear that this only applies to "independent suits" brought against the Government. *See* 692 F.3d at 552. *See also e.g., Roberts v. U.S.*, 141 F.3d 1468 (11th Cir. 1998)(where "a third party with a claimed interest in real property that is currently the subject of a [post-indictment] protective order in a criminal forfeiture proceeding…filed a separate suit against the United States concerning the property," holding that "this suit is clearly barred under 21 U.S.C. § 853(k)(2)" and that she "may properly raise her constitutional claims only before the court that restrained her property in the criminal forfeiture proceeding"; underscoring that, "[a]fter the protective order issued, [she] could have filed a motion to vacate the protective order" in that the statute "does not exclude the authority to hold a hearing subsequent to the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper," citing to its legislative history, and that "[i]t seems clear that Congress meant to preserve the right of all persons affected by protective orders—including third parties—to challenge those orders as they would any injunction, as long as no party asks the court 'to entertain challenges to the validity of the underlying criminal indictment'"; and noting that she had, in fact, filed such a motion but, at the hearing, "she withdrew her objection to the restraints placed on the five parcels that are the subject of the instant case, apparently in favor of pursuing

motion need not turn upon any exercise of equitable jurisdiction.

Fourth, the Government relies upon the unpublished case of *U.S. v. O'Brien*, No. 97-4382, 1999 U.S. App. Lexis 9147, at *8-9 (6th Cir. 1999), to argue that Petitioner, as a third party, lacks standing to argue that the Government is improperly seizing *Petitioner's* "untainted substitute asset[s]" because 21 U.S.C. § 853(p) only "allows the Government to seize *the defendant's* non-tainted assets under limited circumstances—so challenging such a forfeiture is the right of a defendant—not a third party." ECF No. 103, PageID.953-54. *O'Brien* does not stand for this proposition,[6] and this circular argument is otherwise pure gamesmanship. If Petitioner's seized assets are not actually traceable to the Check (and, thus, are outside the Restraining Order's authority), then they constitute "untainted" (or "substitute") assets of *Petitioner* and the Government's seizure of them would be unlawful in that 21 U.S.C. § 853 does not authorize the seizure or forfeiture of a

---

her objections here" and the district court "entered an order granting [her] motion in part" and reflecting her "change of heart with regard to the five parcels").

[6] *See O'Brien*, 1999 U.S. App. Lexis at *1-9 (after affirming the denial of a third party's 21 U.S.C. § 853(n) petition challenging an order forfeiting a Mercedes *titled in defendant's name as a substitute asset of defendant under 21 U.S.C. § 853(p)* on the ground that she could not "make a prima facie showing of a legal right, title, or interest in the Mercedes," rejecting her additional argument "that the Mercedes was improperly seized because it was an untainted substitute asset" and reasoning as follows: "[t]he very nature of a substitute asset is that it is untainted but is seized in place of an unrecoverable tainted asset" under subsection (p); the civil-forfeiture case that she relies on "is inapplicable here" because "civil forfeiture…does not have a provision for the seizure of substitute assets" and, here, defendant "criminally forfeited his assets under his plea agreement"; and, "[i]n addition, [she] does not have standing to challenge this aspect of the forfeiture proceeding").

third party's substitute assets (but, rather, only the defendant's substitute assets post-conviction under certain limited circumstances).[7] Petitioner clearly has standing to challenge the unlawful seizure of *its own property*, and it is not making such a challenge on behalf of Kazkaz with respect to *his* property.

Last, the Government, either totally ignoring or misapprehending the supporting authority that Petitioner has cited,[8] contends that Petitioner can find no case that grants the relief it is seeking,[9] and essentially argues that Supreme Court and Sixth Circuit case law as well as the statute itself "foreclose" the requested relief. ECF No. 103, PageID.954-55. Specifically, the Government cites to *Kaley v. U.S.*, 571 U.S. 320, 338 (2014), for the proposition that "*even defendants* cannot challenge the grand jury's determination of probable cause"—which is off-point as there has been no such probable cause determination on the requisite traceability here. *Id.,* PageID.954-55. The Government also argues that, because 21 U.S.C. § 853(e)(1)(A)

---

[7] *See e.g., U.S. v. Parrett*, 530 F.3d 422, 429-32 (6th Cir. 2008); *U.S. v. Erpenbeck,* 682 F.3d 472, 478 (6th Cir. 2012); *U.S. v. Lester,* 85 F.3d 1409, 1413 (9th Cir. 1996); *In re Moffitt, Zwerling, & Kemler, P.C.,* 864 F. Supp. 527, 533, 543 (E.D. Va. 1994).

[8] *See* ECF No. 95, PageID.914-18 (discussing such supporting legal authorities as *U.S. v. Jones*, 160 F.3d 641, 644 (1998); *U.S. v. Real Property in Waterboro*, 64 F.3d 752, 755-56 (1st Cir. 1995); *U.S. v. Kingston,* 515 F. Supp. 3d 1196, 1198-1201 (D. Utah 2021); and S. Rep. No. 225, 98th Cong., 2d Sess. (1984), *reprinted* in 1984 U.S.C.C.A.N. 3182).

[9] *But see e.g., U.S. v. Kingston,* 515 F. Supp. 3d 1196, 1201-02 (D. Utah 2021)(holding a hearing, under 21 U.S.C. § 853(e)(1)(A), on third parties' motion to modify or vacate the court's post-indictment restraining order, but finding that the Government established probable cause sufficient to support the property restraint and that the third parties chose not to present any counter-evidence at the hearing.)

does not expressly *require* a hearing for a post-indictment restraining order, unlike § 853(e)(1)(B), which does for a pre-indictment restraining order, this somehow means that the former hearing is "foreclosed" or not permitted (contrary to legislative history and case law otherwise).[10] *Id.*, PageID.955-56. The Government then cites various cases in support of its argument that the relief Petitioner requests here is somehow precluded even though none of those cases raised or even involved the issue of whether a court has the authority to grant the requested relief in the context of its own post-indictment restraining order under 21 U.S.C. § 853(e). *Id.*, PageID.956-57 (citing such cases as *Brown*, 692 F.3d at 552, and *U.S. v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014)). Tellingly, the Government otherwise maintains that "[t]his is not the case to break new ground in the Sixth Circuit." *Id.*, PageID.957.

---

[10] But s*ee e.g., U.S. v. Moya-Gomez*, 860 F.2d 706, 727-28 (7th Cir. 1988)(generally recognizing within the context of the defendant's Due Process claim based upon the post-indictment restraint of funds needed to retain counsel and, in particular, in analyzing the process otherwise available under 21 U.S.C. § 853(e) that, "[i]n contrast to the pre-indictment restraining order authority set out in…[ § (1)(B)], the post-indictment restraining order provision[, § (1)(A),] does not *require* prior notice and opportunity for a hearing" based on the reasoning that "[t]he indictment or information itself gives notice of the government's intent to seek forfeiture of the property" and "the probable cause established in the indictment or information is, in itself, to be a sufficient basis for issuance of a restraining order" (*i.e.,* "[w]hile the court may consider factors bearing on the reasonableness of the [restraining] order sought, it is not to 'look behind' the indictment"), but underscoring that this subsection, as evident in its legislative history, "does not *exclude…*the authority to hold a hearing subsequent to the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper (*e.g.,* where information presented at the hearing shows that the property restrained was not among the property named in the indictment)," as long as the court, in exercising its authority under § 853(e)(1)(A) to hold such a hearing, does not "entertain challenges to the validity of the indictment")(emphasis added).

This Court, however, does have the inherent and statutory authority to grant all the relief requested by Petitioner here, and there can hardly be any case in more need of the Court's exercise of such authority, where the Government, under the purported authority of the Court's Restraining Order, is indiscriminately and unlawfully seizing Petitioner's untainted assets, in flagrant disregard of the Court's Order.

> Respectfully submitted,
>
> Hertz Schram PC
> /s/ Walter J. Piszczatowski (P27158)
> Attorney for Restaurant Group Petitioner
> 1760 S. Telegraph Rd., Ste. 300
> Bloomfield Hills, MI 48302-0183
> (248) 335-5000 / fax (248) 335-3346
> wallyp@hertzschram.com
>
> Schenk & Breutsch, PLC
> /s/ David W. Jones (P57103)
> Attorney for Restaurant Group Petitioner
> 211 W. Fort Street, Suite 1410
> Detroit, MI 48226
> (313) 774-1000
> david.jones@sbdetroit.com
> thomas.bruetsch@sbdetroit.com

Dated:  June 6, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2023, I electronically filed the foregoing National Restaurant Chain No. 1's Reply Brief in Support of its Supplemental Motion for Modification of the Post-Indictment Restraining Order, for the Immediate Release and/or Return of Property Illegally Seized Thereby, and for a Hearing with the clerk of the court using the ECF system which will send notification of such filing to the ECF participants.

>Hertz Schram PC
>/s/ Walter J. Piszczatowski (P27158)
>Attorney for Restaurant Group Petitioner
>1760 S. Telegraph Rd., Ste. 300
>Bloomfield Hills, MI 48302-0183
>(248) 335-5000 / fax (248) 335-3346
>wallyp@hertzschram.com